1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11   CAROL L. LeBLANC,                    )   Case No. EDCV 07-1175 JC
                                          )
12                   Plaintiff,           )
                                          )   MEMORANDUM OPINION
13            v.                          )
                                          )
14   MICHAEL J. ASTRUE,                   )
     Commissioner of Social               )
15   Security,                            )
                                          )
16                   Defendant.           )
17   _____ )

18   **I.    SUMMARY**

19          On September 25, 2007, plaintiff Carol L. LeBlanc ("plaintiff") filed a

20   complaint seeking review of the Commissioner of Social Security's denial of

21   plaintiff's application for benefits.  The parties have filed a consent to proceed

22   before a United States Magistrate Judge.

23          This matter is before the Court on the parties' cross motions for summary

24   judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

25   Court has taken both motions under submission without oral argument.  See Fed.

26   R. Civ. P. 78; L.R. 7-15; September 27, 2007 Case Management Order, ¶ 5.

27   ///

28

1

1  Based on the record as a whole and the applicable law, the decision of the

2  Commissioner is AFFIRMED. The findings of the Administrative Law Judge

3  ("ALJ") are supported by substantial evidence and are free from material error.[1]

4  **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5  **DECISION**

6  In April and May 2004, plaintiff filed applications for Supplemental

7  Security Income ("SSI") and Disability Insurance Benefits ("DIB").

8  (Administrative Record ("AR") 16, 183-86).  Plaintiff asserted that she became

9  disabled on March 20, 2003, due to spina bifida occulta, hypertension and

10  congestive heart failure.  (AR 204-05).

11  The ALJ held hearings on March 22, 2006, and September 6, 2006.  (AR

12  31-87).  On November 16, 2006, after examining the medical record and hearing

13  testimony from plaintiff (who was represented by counsel) and medical and

14  vocational experts, the ALJ issued his first decision in which he determined that

15  plaintiff was not disabled through the date of the decision.  (AR 123-27).  On

16  February 15, 2007, the Appeals Council vacated the ALJ's first decision, and

17  remanded the matter.  (AR 128-30).

18  The ALJ held a third hearing on April 17, 2007.  (AR 88-113).  On May 4,

19  2007, after again examining the medical record (which included additional

20  exhibits) and hearing testimony from plaintiff (who was represented by counsel)

21  and medical and vocational experts, the ALJ issued his second decision in which

22  he determined that plaintiff was not disabled prior to July 1, 2006, but became

23  disabled thereafter, and continued to be disabled through the date of the decision.

24  (AR 16-24).  Specifically, the ALJ found:  (1) plaintiff suffered from the following

25

26  _____

27  [1]The harmless error rule applies to the review of administrative decisions regarding disability.  See Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social

28  Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

severe combination of impairments:  lumbar and cervical spine disorders, obesity,

gallbladder disease, and a history of congestive heart failure (AR 18);

(2) plaintiff's impairments, considered singly or in combination, did not meet or

medically equal one of the listed impairments (AR 19); (3) prior to July 1, 2006,

plaintiff (i) could lift, carry, push, or pull ten pounds frequently, and twenty

pounds occasionally; (ii) could sit frequently (six out of eight hours) with a change

in position every thirty minutes; (iii) could stand or walk occasionally (two out of

eight hours) frequently with a change in position every thirty minutes; (iv) could

stoop, bend, and climb ramps and stairs occasionally; (v) could crouch less than

occasionally; (vi) could not kneel, balance or climb ladders or scaffolds;

(vii) could not be exposed to hazards such as unprotected heights and dangerous

or fast moving machinery; and (viii) could not work in unairconditioned

workplaces (AR 19-20); (4) beginning on July 1, 2006, plaintiff also would be

expected to be off task mentally five percent of the time beyond regularly

scheduled breaks due to impaired concentration; (5) prior to July 1, 2006, plaintiff

could perform her past relevant work, but could not do so beginning on July 1,

2006 (AR 22); (6) beginning on July 1, 2006, there were not a significant number

of jobs in the national economy that plaintiff could perform (AR 23);

(7) plaintiff's statements concerning the intensity, persistence and limiting effects

of her symptoms were not entirely credible prior to July 1, 2006, but her

allegations regarding her symptoms and limitations beginning on July 1, 2006,

were generally credible.  (AR 21, 22).

     The Appeals Council denied plaintiff's application for review.  (AR 7-9).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

     To qualify for disability benefits, a claimant must show that she is unable to

engage in any substantial gainful activity by reason of a medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit her ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional capacity to perform her past relevant work?[2]  If so, the claimant is not disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

---

[2]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

## B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)). To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff contends that the ALJ (1) failed properly to evaluate plaintiff's impairments at step two of the sequential evaluation analysis; (2) failed properly to ///

5

1   evaluate plaintiff's credibility; and (3) posed an incomplete hypothetical to the
2   vocational expert.  The Court considers each issue in turn.

### A.    The ALJ Properly Evaluated Plaintiff's Impairments

#### 1.    Pertinent Law

5       At step two of the sequential evaluation process, plaintiff has the burden to
6   present evidence of medical signs, symptoms and laboratory findings that establish
7   a medically determinable physical or mental impairment that is severe,[3] and that
8   can be expected to result in death or which has lasted or can be expected to last for
9   a continuous period of at least twelve months.  Ukolov v. Barnhart, 420 F.3d 1002,
10  1004-1005 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20
11  C.F.R. §§ 404.1520, 416.920.  A medical "sign" is "an anatomical, physiological,
12  or psychological abnormality that can be shown by medically acceptable clinical
13  and laboratory diagnostic techniques[.]"  Ukolov, 420 F.3d at 1005 (quoting
14  Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at *1 n.2).  A
15  "symptom" is "an individual's own perception or description of the impact of his
16  or her physical or mental impairment(s)[.]"  Id. (quoting SSR 96-4p, 1996 WL
17  374187, at *1 n.2); see also 20 C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b).
18  Substantial evidence supports an ALJ's determination that a claimant is not
19  disabled at step two where "there are no medical signs or laboratory findings to
20  substantiate the existence of a medically determinable physical or mental
21  impairment."  Id. (quoting SSR 96-4p, 1996 WL 374187, at *1-*2).  "[U]nder no

---

[3]An impairment is severe if it significantly limits one's ability to perform basic work
activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment is "non-severe" if it does not
significantly limit one's physical or mental ability to do basic work activities.  20 C.F.R.
§§ 404.1521(a), 416.921(a).  Basic work activities are the "abilities and aptitudes necessary to do
most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling,
reaching, carrying, and handling; (2) the capacity for seeing, hearing, and speaking;
(3) understanding, carrying out, and remembering simple instructions; (4) the use of judgment;
(5) responding appropriately to supervision, co-workers, and usual work situations; and
(6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).

circumstances may the existence of an impairment be established on the basis of symptoms alone."  Ukolov, 420 F.3d at 1005 (citation omitted); SSR 96-4p, 1996 WL 374187, at *1-2 ("[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.").

Step two is "a de minimis screening device [used] to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Applying the normal standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments.  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").

### 2.  Pertinent Facts

Dr. Somchit Poommipanti ("Dr. Poom") treated plaintiff from May 30, 2003 to May 17, 2005.  (AR 291-303; 352-54).  On May 7, 2003, Dr. Poom ordered an ultrasound-pelvic mass examination of plaintiff which revealed no uterine abnormalities.  (AR 303).  During a May 30, 2003 visit, plaintiff complained of experiencing a "heavy period."  (AR 297).  The same day Dr. Poom referred plaintiff to Dr. Visith Prin, an Obstetrics/Gynecology doctor.  (AR 298).

On or about October 13, 2003, Dr. Prin diagnosed plaintiff with, *inter alia*, dysfunctional uterine bleeding, and noted that plaintiff had not responded to hormone treatment.  (AR 299).  On December 5, 2003, Dr. Prin ordered testing for ///

7

plaintiff's "dysfunctional uterine bleeding," which revealed "no diagnostic histologic abnormality." (AR 300).

In an October 2004 disability report, plaintiff complained, *inter alia*, of "heavy periods" and noted that she had received "hormone therapy." (AR 221, 223).

Dr. Reuben Castillo treated plaintiff from approximately March 2005 until February 2007. (AR 49, 390). Dr. Castillo's August 9, 2005, examination notes reflect that plaintiff was scheduled for a hysterectomy due to "endometriosis." (AR 345). On August 9, 2005, Dr. Castillo completed a Riverside County Department of Public Social Services medical report form. (AR 344). Dr. Castillo diagnosed plaintiff with, among other things, endometriosis with a probable duration of June 2004 to December 2005. (AR 344). Dr. Castillo concluded that, as a result of her impairments, plaintiff (1) was "unable to sit, stand, walk more than a few minutes without pain;" (2) could not work full-time at her regular job; and (3) could not work full or part-time at any other job. (AR 344). Dr. Castillo subsequently completed three more medical reports, none of which repeated his diagnosis of endometriosis.[4]

---

[4]On April 29, 2006, Dr. Castillo completed a medical opinion form regarding plaintiff's ability to do work-related activities. (AR 377-79). Dr. Castillo diagnosed plaintiff with "Congestive heart failure, degenerative disk disease of cervical spine, [and] spina bifida occulta," which resulted in decreased strength and range of motion for all four of plaintiff's extremities. (AR 378, 379). He concluded that plaintiff: (1) was able to lift less than ten pounds on a frequent or even occasional basis; (2) could stand, walk or sit with normal breaks less than two hours in an eight-hour day; (3) would need to change positions every 20 minutes whenever seated, and every 15 minutes when standing; (4) could not walk for any significant period of time; (5) would need to shift at will from sitting to standing/walking; (6) would need to lie down at unpredictable intervals during a work shift at least every 2 hours; (7) could climb stairs only occasionally, and could never twist, stoop/bend, crouch or climb ladders; (8) had poor ability for reaching, handling, fingering, feeling, and pushing/pulling; and (9) needed to avoid all exposure to extreme cold/heat, wetness, humidity, noise, fumes (e.g. odors, dusts, gasses, poor ventilation, etc.), and hazards (e.g. machinery, heights). (AR 377-79).

(continued...)

On August 18, 2005, Dr. Castillo's examination notes reflect that plaintiff had a history of "heavy menses," but complained that day that her menstruation period (due on August 1) was late. (AR 330). On August 19, 2005, Dr. Castillo ordered an ultrasound of plaintiff's pelvis which revealed no significant abnormalities. (AR 338). The stated reason for the ultrasound was that plaintiff complained of "pelvic pain" and that she "ha[d]n't had menses for over a month." (AR 338). On August 30, 2005, Dr. Castillo referred plaintiff to an Obstetrics/Gynecology doctor due to an "ovary cyst." (AR 331). On October 4, 2005, Dr. Castillo referred plaintiff to a specialist for a "total abdominal hysterectomy," based on a diagnosis of "excessive or frequent menstruation" and "Dysmenorrhea." (AR 347). On August 4, 2006, Dr. Castillo again referred plaintiff to an Obstetrics/Gynecology doctor due to an "ovarian cyst." (AR 382). Dr. Castillo's July 31, 2006, examination notes reflect additional referrals for an ultrasound of plaintiff's pelvis and to an Obstetrics/ Gynecology doctor for an "ovarian cyst." (AR 383).

In November 9, 2005, medical testing revealed plaintiff had adenomyosis, or "fibroids," which can cause menometrorrhagia. (AR 322; see AR 79-80).

///

---

[4](...continued)
On July 7, 2006, Dr. Castillo completed a second Riverside County medical report form. (AR 385). He diagnosed plaintiff with spina bifida occulta, congestive heart failure, and hypertension, lasting through November 30, 2006. (AR 385). Dr. Castillo opined that plaintiff (1) was following the prescribed course of treatment; (2) was "unable to sit, stand, walk more than a few minutes without pain;" (3) could not work full-time at her regular job; (4) could not work full or part-time at any other job. (AR 385). He also stated that there were no restrictions on activity that would permit plaintiff to work. (AR 385).

On February 22, 2007, Dr. Castillo completed a third Riverside County medical report form. (AR 390). He diagnosed plaintiff with spina bifida occulta, congestive heart failure, and diverticulitis lasting from February 22, 2007 to December 31, 2008. (AR 390). Dr. Castillo identified the same limitations on plaintiff's activities. (AR 390). He also noted that surgery was scheduled for gallstones to be removed, and that plaintiff was advised to see him only on an as needed basis. (AR 390).

At the March 22, 2006, hearing, plaintiff testified she had been experiencing excessive bleeding and cramping for approximately the prior two years, but those symptoms stopped after her hysterectomy surgery in November 2005.[5]  (AR 59-61).  One of the exhibits admitted in conjunction with the March 22, 2006 hearing was plaintiff's list of medical treatment in which plaintiff indicated that Dr. Castillo had referred her to another physician "for uncontrolled bleeding."  (AR 235).

At the September 6, 2006 hearing, Dr. Samuel Landau, the testifying medical expert, stated that he found no evidence in the record that supported Dr. Castillo's August 2005 diagnosis of endometriosis.  (AR 77, 79, 80).  Dr. Landau noted that plaintiff's pelvic ultrasound in August of 2005 was "normal."  (AR 79).  He also noted medical records that revealed plaintiff had "some menometrorrhagia" which supported the stated diagnosis of adenomyosis, or "fibroids" which can cause menometrorrhagia.  (AR 79-80; see AR 322).  Dr. Landau also testified that "menstrual irregularity" could be a consequence of plaintiff's obesity.  (AR 80).

In a January 2007 disability report, plaintiff complained, *inter alia*, that she suffered from "bleeding 15 to 20 days out of a month," "severe pain" and uncontrollable bleeding.  (AR 252, 256, 261).  Plaintiff stated that her primary care physician referred her for a partial hysterectomy (performed in November 2005), and a radical hysterectomy (performed in December of 2006).  (AR 255, 261, 263).  Plaintiff stated that the surgeries involved removing several cysts from

///

///

///

---

[5]At the March 22, 2006, hearing, plaintiff's attorney noted that the medical expert did not address plaintiff's hysterectomy.  (AR 41).  He surmised, as did the ALJ, that the medical expert did not mention the surgery because it was "a non-severe condition" or "maybe non-durational."  (AR 41-42).

her right ovary, and detaching plaintiff's right ovary from her lower intestine.  (AR 261).[6]

At the April 17, 2007 hearing, plaintiff testified that she had received two hysterectomies, and was scheduled for gallbladder surgery shortly after the hearing.  (AR 95, 101-102).

In the May 4, 2007 decision in issue, the ALJ noted that plaintiff's symptoms included severe pelvic pain, as well as "menstrual bleeding and cramps."  (AR 21).  Relying heavily on the testimony of the medical expert, the ALJ rejected the medical findings of Dr. Castillo, plaintiff's treating physician, because:  (1) there was no objective medical evidence supporting Dr. Castillo's diagnosis of endometriosis (AR 21); (2) it was "remarkable" that Dr. Castillo failed to "note or comment on [plaintiff's] obviously marked obesity" (AR 21); (3) the "extreme limitations" stated in Dr. Castillo's April 29, 2006, July 7, 2006, and February 22, 2007 medical reports were "not supported by the doctor's own records" (AR 21); and (4) Dr. Castillo's July 7, 2006, examination notes "reflected poor recordkeeping," since they included an outdated diagnosis, and referenced appointments on dates not supported by the physician's actual notes.  (AR 21-22).  The ALJ concluded that Dr. Castillo's findings were generally not credible, stating that the physician's "treatment of [plaintiff was] quite desultory and marginally passable."  (AR 22).

### 3.   Analysis

As noted above, the ALJ did not find endometriosis to be a severe impairment at step two of the sequential evaluation process.  (AR 19, 21).  Plaintiff contends this omission was error because (1) medical records document a history of "treatment and diagnostic tests" for plaintiff's "heavy menstrual

---

[6]In her January 2007 disability report, plaintiff listed "back pain, shoulder, arm and hand pain, spinal bifica occulta, [and] bone degenerative disease" as impairments that limited her ability to work, but notably did *not* list "endometriosis or bleeding" as such.  (AR 253).

bleeding," including two hysterectomies performed to relieve "severe pelvic pain, menstrual bleeding, and cramps" and emergency treatment for "severe pain and [uncontrollable] bleeding" (AR 255-56, 297, 314-17, 322, 330, 331, 338, 345, 347, 382, 383); and (2) plaintiff has a lengthy history of symptoms relating to "difficulties [connected with] endometriosis" (AR 261).  (Plaintiff's Motion at 2-4 & n.1).  Defendant contends that the evidence is insufficient to establish endometriosis as a severe impairment.  The Court concludes, based on a review of the record, that plaintiff failed to satisfy her burden to establish endometriosis as an impairment, and that the ALJ's findings at step two are supported by substantial evidence and not free from material error.

First, plaintiff points to no medical signs or laboratory findings that establish endometriosis as an impairment, and the Court finds none.  Ukolov, 420 F.3d at 1004-1005 (plaintiff has burden to present evidence of medically determinable physical impairment).

Second, although plaintiff's treating physician, Dr. Castillo, opined that plaintiff suffered from endometriosis, the ALJ rejected that opinion based on adequate reasons supported by substantial evidence.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (treating physician's opinion "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability"); Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 603 (9th Cir. 1999) (opinion of treating physician may be rejected if ALJ provides "specific, legitimate reasons . . . based on substantial evidence in the record.") (citation omitted).  Dr. Landau reviewed plaintiff's medical records, and concluded that there were no medical signs or laboratory tests that supported Dr. Castillo's diagnosis of endometriosis. (AR 77, 79, 80).  Dr. Landau testified that the likely cause of plaintiff's excessive bleeding was adenomyosis, fibroids, or obesity.  (AR 79-80).  The conflicting assessment of Dr. Landau, based in part on objective medical evidence, constitutes

1
2
3
4

substantial evidence in support of the ALJ's decision to reject Dr. Castillo's opinion.  See, e.g., Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it").[7]

5
6
7
8
9
10

Third, medical notes reflecting physician efforts to evaluate, refer and treat plaintiff's complaints of excessive menstrual bleeding, including gynecological surgery, are insufficient evidence to establish endometriosis as one of plaintiff's impairments.  Major v. Astrue, 2008 WL 4809827, at *4 (E.D. Wash. Oct. 30, 2008) ("Evidence of a medical provider's efforts to evaluate and treat a claimant is not sufficient to establish an impairment.") (citing Ukolov, 420 F.3d at 1005).

11
12

Finally, evidence of plaintiff's own perceptions or description of the "effects" of her alleged endometriosis, without more, cannot establish the

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

[7]The ALJ noted other legitimate reasons for rejecting Dr. Castillo's opinion.  First, the ALJ pointed out that the extreme limitations in Dr. Castillo's disability reports were not supported by the physician's own records.  (AR 21).  For example, Dr. Castillo consistently diagnosed plaintiff with congestive heart failure, yet his treating records reveal no evidence that he treated plaintiff for that condition.  (Compare AR 378, 385, 390, with AR 321-54, 381-89).  An ALJ may properly reject a treating physician's opinion based upon the absence of supporting treatment notes.  Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003).  Second, the ALJ pointed to obvious errors in Dr. Castillo's records.  For example, while plaintiff did suffer from congestive heart failure in late 1999, medical records reflect that plaintiff's cardiac functioning returned to normal shortly after treatment.  (AR 103, 355-72).  The fact that Dr. Castillo continued to diagnose plaintiff with an outdated condition was a legitimate reason for questioning Dr. Castillo's credibility.  Batson, 359 F.3d at 1195 (ALJ may reject medical opinion that is unsupported by the record or objective medical findings).  Third, the ALJ noted that some of Dr. Castillo's medical records were inconsistent.  (AR 21-22).  For example, while Dr. Castillo's July 7, 2006 disability report stated that plaintiff's prior visit had been on July 5, 2006, and that a future appointment was scheduled for July 10, 2006, none of Dr. Castillo's notes reflect those visits.  (AR 385).  The ALJ permissibly concluded that such inconsistencies impacted the credibility of Dr. Castillo's medical findings.  Morgan, 169 F.3d at 603 (ALJ may reject treating physician's opinion where there are internal inconsistencies in treatment reports).  Finally, although he treated plaintiff for almost two years, Dr. Castillo inexplicably failed to document the effects of plaintiff's obvious obesity (AR 21).  Cf. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (treating physicians are usually most familiar with claimant's medical impairments).

1
2
existence of an impairment.[8]  Ukolov, 420 F.3d at 1005 (quoting SSR 96-4p); see
20 C.F.R. §§ 404.1508, 416.908.

3
4
5
Accordingly, the ALJ's determination that endometriosis was not one of
plaintiff's severe impairments is supported by substantial evidence and is free
from material error.

6
**B.      The ALJ Properly Evaluated Plaintiff's Credibility**

7
**1.      Pertinent Law**

8
9
10
11
12
Questions of credibility and resolutions of conflicts in the testimony are
functions solely of the Commissioner.  Greger v. Barnhart, 464 F.3d 968, 972 (9th
Cir. 2006).  If the ALJ's interpretation of the claimant's testimony is reasonable
and is supported by substantial evidence, it is not the court's role to
"second-guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

13
14
15
16
17
18
19
20
An ALJ is not required to believe every allegation of disabling pain or other
non-exertional impairment.  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007)
(citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  If the record establishes
the existence of a medically determinable impairment that could reasonably give
rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as
to the credibility of the claimant's statements about the symptoms and their
functional effect.  Robbins, 466 F.3d 880 at 883 (citations omitted).  Where the
record includes objective medical evidence that the claimant suffers from an

21
22
23
24
25
26
27
28
[8]At the request of the Department of Social Services, on August 4, 2004, Dr. Denny H.
Lee conducted an internal medicine examination of plaintiff with respect to her complaints of
congestive heart failure.  (AR 314-20).  In the report's "History of Present Illnesses," Dr. Lee
states that plaintiff told him she had "slight anemia because of significant menstrual bleeding,
related to endometriosis, and is awaiting a hysterectomy in the near future . . . ."  (AR 314).
Dr. Lee's reference to endometriosis was based solely on what plaintiff had told him, and thus
was not a diagnosis.  (AR 314).  As such, it cannot serve as evidence of any impairment.  Major
v. Astrue, 2008 WL 4809827, at *4 (E.D. Wash. Oct. 30, 2008) ("[A] claimant's own perception
of an impairment, 'unaccompanied by a diagnosis or finding of impairment does not and cannot
establish the existence of a disability.'") (citing Ukolov, 420 F.3d at 1006; see Andrews v.
Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (ALJ may legitimately discount opinion of disability
premised on self reporting of unreliable claimant).

impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (e.g., daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. Burch, 400 F.3d at 681.

### 2.     Additional Pertinent Facts

In plaintiff's initial disability reports completed in May 2004, she complained, *inter alia*, of "real bad problems with [her] back" such that she could not "sit for too long." (AR 204, 210). Also in May 2004, plaintiff completed a daily activities questionnaire in which she stated that she was then taking multiple medications, including Flexeril three times a day whenever she had back pain. (AR 218). She further stated that she sometimes used a heating pad around her back for back pain. (AR 218).

///

15

In an October 2004 disability report, plaintiff stated that her condition had gradually gotten much worse, and that she was then taking multiple prescription medications, including Flexeril for back pain. (AR 221, 224).

At the March 22, 2006 hearing, plaintiff testified: She suffered from "constant spasms" and pain in her lower back, "problems" with her knees, swelling in her hands and feet, and "trouble" with her right hand, shoulder and neck. (AR 52-53). As a result, plaintiff had difficulty sleeping, walking for long distances, climbing stairs, and sitting or standing for long periods without changing positions. (AR 52-53). One of the exhibits admitted in conjunction with the March 22, 2006 hearing was a list of plaintiff's prescription medications which reflects that plaintiff was then taking multiple medications including Naproxen for back pain; Ibuprofen for back, neck, and shoulder pain; Flexeril for muscle spasms in her back; and Vicodin for pain in her back, neck and arm. (AR 234).

On August 25, 2006, plaintiff provided the ALJ with another list of her prescription medications which reflects that she had been taking Codeine/Tylenol #3 for back pain three times a day since April 2004; Naproxen for shoulder and back pain two times a day since May 2006; Vicodin for back pain every eight hours beginning on an unspecified date; and Flexeril for back pain beginning on an unspecified date. (AR 239).

At the April 17, 2007, hearing, plaintiff testified: The pain from her impairments had increased. She experienced significant problems with her intestines and gallbladder, as well as memory loss and depression. (AR 95-99). She was then taking Vicodin, Naproxen and Darvocet for pain, the latter of which she had started to take over three months prior to the hearing. (AR 108-09).

In his May 4, 2007 decision, the ALJ noted that plaintiff's symptoms included chronic back pain. (AR 21). The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce her symptoms, but determined that the treatment plaintiff received for those symptoms was

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"inconsistent with the alleged severity of her medical condition." (AR 21). The ALJ stated two reasons for this finding: (1) "[p]rior to July 1, 2006, [plaintiff] was not using any strong medication for pain and did not report any adverse side effects from any medication;" and (2) "treatment of plaintiff's back and neck pain required only physical therapy, with "no indication of any need for more aggressive treatment." (AR 21). The ALJ concluded that plaintiff's testimony regarding the extent, intensity and duration of her alleged subjective symptoms and functional limitations and restrictions was "not entirely credible prior to July 1, 2006." (AR 30-31).[9]

### 3.   Analysis

Plaintiff contends that the ALJ improperly evaluated her credibility. Defendant disagrees. As noted above, the ALJ stated two reasons for finding plaintiff's allegations of severe pain inconsistent with the level of treatment she received. (AR 21). The Court concludes that these were clear and convincing reasons for rejecting plaintiff's pain testimony that were supported by substantial evidence. Therefore, the ALJ did not err in his assessment of plaintiff's credibility.

First, the ALJ stated that prior to July 1, 2006, plaintiff was not using "any strong medication for pain," and there was no evidence of side effects (that may have justified plaintiff's failure to seek stronger treatment). (AR 21). Here, the ALJ could reasonably have inferred that if plaintiff's pain was incapacitating, she would have been more diligent in requesting stronger medication. In assessing credibility, the ALJ may properly rely on plaintiff's unexplained failure to request treatment consistent with the alleged severity of her symptoms. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir.1991) (en banc); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999); see Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir.

_____

[9]The ALJ did not find that plaintiff was malingering.

17

1
2
1999) (lack of treatment and reliance upon nonprescription pain medication "clear
and convincing reasons for partially rejecting [claimant's] pain testimony").

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
        Prior to July 1, 2006, the date the ALJ determined plaintiff became disabled,
plaintiff was taking relatively mild pain relievers (Tylenol with Codeine) and mild
anti-inflammatory medications (Flexeril and Naproxen), and non-prescription
medications (Motrin and Ibuprofen).  See Tylenol with Codeine, Physician's Desk
Reference website, available at http://www.pdrhealth.com ("Tylenol with Codeine,
a narcotic analgesic, is used to treat mild to moderately severe pain"); Ruiz v.
Apfel, 24 F. Supp. 2d 1045, 1049 (C.D. Cal. 1998) (Motrin and Naproxen
"indicated for . . . mild-to-moderate pain") (citation omitted); see also Williams v.
Bowen, 790 F.2d 713, 715 & n.3 (8th Cir. 1986) (upholding ALJ's rejection of
claimant's credibility where claimant took only Flexeril, Equanil and aspirin daily
for his back pain).  While plaintiff's medication report may indicate she took
stronger medications, such as Vicodin, on an earlier date, her testimony at the
April 17, 2007 hearing was not as clear.  (AR 109, 234, 239).  The ALJ could
reasonably have resolved this conflict, concluding that plaintiff did not need
stronger pain medication until she became disabled.  This Court may not substitute
its own judgment on credibility for that of the ALJ.

19
20
21
22
23
24
25
26
27
28
        Second, the ALJ's remaining reason for discrediting plaintiff's complaints
of pain is also supported by substantial evidence.  (AR 21).  The ALJ stated
physical therapy was "successfully" treating plaintiff's back and neck pain, and
there was "no indication of any need for more aggressive treatment."  (AR 21).
Plaintiff testified that her condition improved with physical therapy.  (AR 57-58).
Again, the ALJ could reasonably have inferred that had plaintiff's pain been more
severe, she would have been prescribed, or at a minimum sought out, a more
aggressive course of physical therapy.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th
Cir. 1999) (ALJ properly rejected plaintiff's claim of severe pain as inconsistent
with the "minimal, conservative treatment" she received); Chavez v. Department

of Health and Human Services, 103 F.3d 849, 853 (9th Cir. 1996) (failure to seek "further treatment" for back injury among specific findings justifying rejection of claimant's excess pain testimony).

Contrary to plaintiff's claim, substantial evidence supports the ALJ's finding that after July 1, 2006, plaintiff's testimony regarding her symptoms and limitations was more credible.  At the April 17, 2007, hearing, plaintiff testified that her condition had worsened, her pain had increased, and as a result she suffered from impaired concentration.  (AR  94-95, 98).  Unlike plaintiff's complaints of pain prior to July 1, 2006, substantial evidence in the record corroborated this testimony.  Plaintiff testified that she had gained additional weight since the prior hearing, a fact the ALJ could personally observe.  (AR 99).  The medical expert testified that plaintiff's increased obesity could cause additional neck and back pain, and in turn could cause problems with concentration.  (AR  105, 107).  Since the prior hearing, plaintiff had received a second hysterectomy and suffered from gallbladder disease that required surgery "shortly after the hearing."  (AR  95, 101-102).  Objective medical tests corroborate the need for both these surgeries.  (AR 322, 339).  The ALJ's choice of July 1, 2006, as the date plaintiff's condition credibly worsened was reasonably supported by substantial evidence and thus, contrary to plaintiff's assertion, not arbitrary.  See Fair, 885 F.2d at 604 ("Credibility determinations are the province of the ALJ.").

Accordingly, as the ALJ made specific findings stating clear and convincing reasons supported by substantial evidence for disbelieving plaintiff prior to July 1, 2006, the ALJ's credibility determination was not erroneous.

**C.**     **The ALJ Did Not Pose Incomplete Hypothetical Questions to the Vocational Expert**

Plaintiff alleges that the ALJ's hypothetical questions were incomplete because they erroneously omitted evidence of:  (1) plaintiff's "endometriosis;"

19

(2) the effects of plaintiff's hysterectomies that "resulted in intestinal and bowel problems;" and (3) evidence that plaintiff "was incapacitated by cramps and bleeding." (Plaintiff's Motion at 7). Defendant responds that the ALJ included all limitations supported by substantial evidence. (Defendant's Motion at 7-8). The Court agrees with defendant.

A hypothetical question posed by an ALJ to a vocational expert must set out all the limitations and restrictions of the particular claimant. Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended (1997) (citing Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995)); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . .") (emphasis in original; citation omitted). However, an ALJ's hypothetical question need not include limitations not supported by substantial evidence in the record. Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citation omitted).

Here, the ALJ's hypothetical questions set out all of plaintiff's limitations and restrictions supported by the record, and thus were not incomplete.[10]  First, as

---

[10]At the April 17, 2007 hearing, the ALJ engaged in the following discussion with the vocational expert:

Q:    I'm going to ask you two hypothetical questions and for each I want you to assume an individual the same age, education, and work experience as the Claimant. And for the first hypothetical question assume the following residual functional capacity. This person is able to lift 20 pounds occasionally, ten pounds frequently, is able to stand and or walk a total of two hours out of an eight-hour day, is able to sit six hours out of eight-hour day provided that this person is allowed to change positions every 30 minutes for a maximum of three minutes. Posturally, this person is occasionally able to climb ramps and stairs but is not able to climb ladders, scaffolds, or ropes, is not able to balance, is occasionally able to bend, which I mean, when I say bend versus stoop, bending to me is flexing forward at the waist alone. Stooping is bending plus partial flexion of the knees. So bending and stooping occasionally, crouching less than occasionally,

(continued...)

discussed above, plaintiff's claim that she suffers from endometriosis is not supported by substantial evidence in the record.  Accordingly, the ALJ properly omitted any limitations caused by plaintiff's alleged effects of endometriosis from the hypothetical question posed to the vocational expert.

Second, contrary to plaintiff's claims, the ALJ did account for the effects of plaintiff's several surgeries when determining the relevant residual functional capacity.  In his decision, the ALJ concluded that plaintiff's pain level increased due to, *inter alia*, her "history of salpingo-oopherectomy" and "gallbladder disease requiring surgery."  (AR 22).  Nonetheless, plaintiff did not have the second hysterectomy until November 2006, and was scheduled for gallbladder surgery only after the 2007 hearing.  (AR 102).  Thus, the ALJ appropriately limited consideration of any limitations from those conditions to plaintiff's residual functional capacity for the period <u>after</u> July 1, 2006.  (AR 22).

Finally, when determining plaintiff's residual functional capacity, the ALJ stated that he "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence

[10](...continued)
no kneeling, should avoid all exposure to dangerous or fast-moving machinery and unprotected heights.  And the workplace should be air conditioned.  Based on these circumstances could this person perform the Claimant's past work either as actually performed or as generally performed?

A:    Past work that's performable, data entry, not the teacher's assistant position because of the standing and walking.

Q:    Okay.  For my second question, assume everything in question number one plus this person would be off task 5 percent of the time.  Would the past work still be performable?

A:    No.  I don't believe so.  I think off task 5 percent of the time is still a significant amount of time that would preclude the individual from working at competitive employment that was required on a consistent basis.

(AR 111-12).

. . . ." (AR 20).  The ALJ did not discount plaintiff's testimony regarding symptoms of excessive bleeding.  (AR 21).  Rather, the ALJ considered evidence of those symptoms in his residual functional capacity determinations for periods before and after July 1, 2006, and consequently included any limitations therefrom in the hypothetical questions posed to the vocational expert.  (AR 20, 22, 111-12). Conversely, because the ALJ properly found plaintiff's testimony regarding pain not credible, he was justified in not setting out any limitations from "cramps" in his questions to the vocational expert.

**V.   CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   March 20, 2009

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE